UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LYNETTE E. DZIUBAN,

        Plaintiff,

                                           Case Number 07-12902-BC
v.                                         Honorable Thomas L. Ludington

BOARD OF TRUSTEES CITY OF SAGINAW
POLICE OFFICERS AND FIREFIGHTERS
RETIREMENT SYSTEM, BETH CARSON
CHURCH, and JOSEPH A. DZIUBAN,

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT DZIUBAN'S MOTION TO DISMISS, AND GRANTING DEFENDANTS BOARD OF TRUSTEES AND CHURCH'S MOTION TO DISMISS

Defendant Joseph A. Dziuban ("Defendant Dziuban"), Defendant Board of Trustees of the

City of Saginaw Police Officers and Firefighters Retirement System ("Board of Trustees"), and

Defendant Beth Carson Church ("Church") request that the Court dismiss Plaintiff Lynette E.

Dziuban's ("Plaintiff") complaint. See FED. R. CIV. P. 12. The Court heard argument on the

motions on December 19, 2007.

Plaintiff alleged five causes of action arising from the disputed interpretation of an Eligible

Domestic Relations Order ("EDRO") that established Plaintiff's rights to a portion of Defendant

Dziuban's pension benefit earned during their marriage. The Court will **DENY** Defendant

Dziuban's motion to dismiss because of the insufficiency of the record regarding the state court's

EDRO to determine whether the *Rooker-Feldman* doctrine or Domestic Relations exception apply.

Additionally, the Court also will **DENY** Defendant Dziuban's motion to dismiss Plaintiff's tortious

interference claim because Plaintiff alleged that Defendant Dziuban sought to influence the Board of Trustees's interpretation of Plaintiff's pension payment to his benefit and her loss.

The Court will **GRANT** the Board of Trustees and Church's motion to dismiss in its entirety. The Court concludes that Plaintiff is unable to state a cause of action with respect to the due process claim because state courts provide the requisite due process owed to Plaintiff, and Plaintiff failed to appropriately appeal the decision pursuant to Mich. Comp. Laws § 38.555. The Court will also **GRANT** the Board of Trustees' motion to dismiss with respect to the violation of Michigan Constitution claim, breach of contract claim, breach of fiduciary duty claim, and tortious interference claim because the Board of Trustees are immune as a quasi-judicial body. With respect to Church, the Court will **GRANT** her motion to dismiss with respect to the tortious interference claim because Church served as an employee at the discretion of the Board of Trustees and is entitled to Governmental Tort Immunity. Mich. Comp. Laws § 691.1407. The Court will also **GRANT** Church's motion with respect to the breach of fiduciary claim because Plaintiff's allegation of a fiduciary relationship is inadequately plead as it is an unsupported conclusion of law.

I

Plaintiff and Defendant Dziuban were married from May 23, 1980 until February 14, 2002. In May of 2001, Plaintiff filed for divorce in Saginaw Circuit Court. The Honorable William A. Crane, of the family division, presided over the matter.

The circuit court entered the judgment of divorce on February 14, 2002. According to the amended judgment of divorce, entered on August 1, 2002, the circuit court ordered Defendant Dziuban to pay spousal support until February of 2007, child support until their youngest child reached the age of majority, and ninety percent of their children's uninsured healthcare costs.

Plaintiff and Defendant Dziuban each received ownership of a vehicle and assumed any outstanding debt associated with it. Plaintiff received the entire interest in the family dwelling, along with the outstanding mortgage. Defendant also assumed $11,367.00 of consumer debt.

Additionally, the judgment of divorce provided for the distribution of Defendant Dziuban's retirement benefits. At the time of divorce, Defendant Dziuban had been employed as a City of Saginaw fireman for approximately twenty-one years. Plaintiff and Defendant Dziuban had been married for that entire period. The Judgment of Divorce provided:

> IT IS FURTHER ORDERED that Plaintiff is awarded one-half of Defendant [Dziuban]'s pension benefits under the City of Saginaw Policemen and Firemen's Systems accrued between the date of the marriage, May 23, 1980 and the date of the filing of the Complaint of this action, May 23, 2001. The division shall occur by entry of an Eligible Domestic Relations Order (EDRO) which is consistent with the agreement of the parties placed on the record on February 14, 2002.

> IT IS FURTHER ORDERED that unless specifically provided otherwise in this Judgment, all rights of either party in and to any pension, annuity, or retirement benefits; and accumulated contributions in any pension, annuity, or retirement system; any right or contingent right in and to unvested pensions, annuity or retirement benefits shall hereafter be the sole property of the party in whose name or for whose benefit the said rights, contingent rights and contributions are held.

Dkt. # 14-2. The order also contained a provision that retained the circuit court's jurisdiction to issue any "necessary and proper" orders to enforce the judgment.

On June 17, 2002, the court entered the EDRO. The EDRO assigned a portion of Defendant Dziuban's pension rights as a former firefighter to Plaintiff. The EDRO stated:

> "It is the parties' intention and the order of this Court that the Alternate Payee (Lynette E. Dziuban) receive a monthly benefit from the plan of 50% of the amount of the Participant's retirement benefit which has accrued between May 23, 1980 and March 21, 2001. This assignment applies only to service time earned during the marriage and excludes service prior to the marriage or subsequent to the filing of the Complaint for Divorce (May 23, 1980 through May 21, 2001).

> The Alternate Payee's benefit shall include a pro rata share of any guaranteed

automatic annual benefit increases that were part of the Participant's accrued benefit as of the allocation date. If the Participant acquires no right to a pension from the plan due to termination of covered employment before vesting occurs or death of the Participant before retirement and before the eligibility conditions for a pre-retirement survivor benefit have been satisfied or for any other reason the Alternate Payee's rights shall be limited to the stated percentage of nonpension benefits, if any, that the Plan make to, or on behalf of the Participant that had accrued as of the allocation date."

On April 10, 2007, Defendant Dziuban retired from his position as Chief of the City of Saginaw Fire Department, where he was employed for approximately twenty-eight years. On his date of retirement the amount of Defendant Dziuban's retirement benefit vested. The Saginaw Code of ordinances establishes the formula that the Board of Trustees utilize to determine the retiree's annual pension. The formula is as follows:

The average of the annual compensations paid a member during any three (3) years he or she may elect within the period of ten (10) consecutive years of his or her credited service immediately preceding the date of termination of his or her last employment with the City as a police officer or firefighter. . .

Dkt. # 7-4 at 3. The code establishes the types of pensions, the pension fund's structure, and various other matters. The code specifically prohibits assignments, but provides an exception for EDROs.

According to the complaint, immediately preceding his retirement Defendant Dziuban elected the three years where he had the highest compensation between April 11, 1997 and April 10, 2007. This calculated to be a monthly pension of $6,388.59. The Board of Trustees, however, permitted Defendant Dziuban, and not the alternate payee, to select the lowest three years of compensation from May 22, 1991 to May 21, 2001 for the calculation of Plaintiff's benefit. This calculated to be a bi-weekly pension of $912.60, of which Plaintiff received half.

Allegedly, Defendant Dziuban undertook efforts to explain his "position" to the Board of Trustees that he, as a plan participant, retained the right to make the decisions concerning Plaintiff's

benefit.  At the motion hearing, the Board of Trustees recognized that Defendant Dziuban selected

two distinct three year time periods to maximize his payment, and minimize Plaintiff's payment.[1]

Moreover, counsel for the Board of Trustees acknowledged that Defendant Dziuban personally

contacted the Board of Trustees requesting it to calculate the payments in a manner that  maximized

his share and minimized Plaintiff's share.  Additionally, counsel represented that the Board of

Trustees previously allowed other pension beneficiaries to similarly calculate payments to minimize

payments to alternate payees.

Counsel for the Board of Trustees contended that the plan administrator reviewed the EDRO

at the time of its drafting and approved it.  He also acknowledged that the EDRO established a

separate benefit for Plaintiff and not a shared benefit.  If the EDRO had established the pension as

a shared benefit, then Defendant Dziuban's ultimate pension payment would merely have been

---

[1] The Board of Trustees explained the calculation of Defendant Dziuban's benefits as follows:

Before his retirement, Defendant Dziuban requested numerous estimates regarding his retirement
benefit and thereafter selected the years to be used for the calculation of his Final Average Salary. The
retirement benefits that accrued during the term of marriage and subject to the terms of the EDRO (i.e.
May 23, 1980 through March 21, 2001) are calculated based upon the following: (a) 20 years and 10
months of service credit; (b) $61,398.12 Final Average Salary based upon compensation received
during the three (3) year period from April, 1991 through March, 1994 as selected by Defendant
Dziuban; and (c) a benefit multiplier of 2.6%. Based upon the foregoing, the Retirement System's
actuary has calculated the Plaintiff's marital portion to be $626.65 bi-weekly, or $16,292.90 annually.
(Exhibit C, Letter dated August 14, 2007 from the Board of Trustees' Actuary). The Retirement
System Defendants acknowledge that Defendant Dziuban's selection of years regarding the Plaintiff's
retirement benefit do not result in the highest possible Final Average Salary.

With regards [sic] to calculation of Defendant Dziuban's retirement benefit as of the date of his
retirement, April 10, 2007, the following information was used: (a) 28 years, 2 months of service
credit; (b) $109,555.16 Final Average Salary based upon three (3) years of compensation received
from August 2002 to July 2003; July 2004 to June 2005; and December 2005 to November 2006 as
selected by Defendant Dziuban; and (c) a benefit multiplier of 2.6% for the first 25 years of service
**and** an additional 2.75% for all service in excess of 25 years. Based upon the foregoing, the
Retirement System's actuary has calculated Defendant Dziuban's retirement benefit to be $3,105.82
bi-weekly, less the amount allocated to the Plaintiff, $639.57 bi-weekly for a net benefit payable to
Defendant Dziuban in the amount of $2,466.25 bi-weekly, or $64,122.50 annually.

Dkt. 6 at 13-14.

divided between Plaintiff and Defendant Dziuban based upon a coverture factor. Plaintiff would not have had a distinct right with respect to the pension. In contrast, as a separate benefit, Plaintiff has an independent and separate right independent from Defendant Dziuban's benefit. As Plaintiff's separate benefit, counsel acknowledged that the Board of Trustees maintained a fiduciary duty to Plaintiff, as an alternate payee.

Plaintiff, however, also appears to contend that she should receive a shared benefit equal to one- half of seventy-five percent (½ of 75%) of Defendant Dziuban's entire pension, or $2,395.72 monthly, though she did not furnish any authority for that proposition. Plaintiff contends that the alternative figure would produce a monthly benefit equal to $2,395.72.

In September of 2006, Plaintiff filed a motion for clarification of the EDRO before Judge Crane, requesting the circuit court to interpret its EDRO to provide Plaintiff with one-half of the seventy-five percent interest. Defendant Dziuban contended the manner that the parties calculated the pension payments was as contemplated by the parties at the time of divorce. See Dkt. 14-8 at 3. Defendant Dziuban asserts that Plaintiff specifically agreed to a two-tiered calculation of benefit payments in exchange for increased child support, equity in the marital home, a vehicle, and Defendant Dziuban's assumption of consumer debt.

The circuit court's order denied the motion for clarification and stated that "Plaintiff filed a motion for EDRO Clarification relating to the benefit Plaintiff is to receive under the City of Saginaw Policeman & Fireman Retirement System." Dkt. # 7-5. The order did not explain the reasoning behind the circuit court's decision beyond providing that the it denied Plaintiff's motion for clarification on the record. According to Defendant Dziuban's motion, Judge Crane held an evidentiary hearing prior to denying the motion for clarification, at which Church testified about the

EDRO calculations. The record of the hearing was not available to this Court at the time the motions were argued. Allegedly, Plaintiff did not appeal the circuit court's decision to the Michigan Court of Appeals.

On June 22, 2007, Church, the Board of Trustees' secretary and personal generalist, notified Plaintiff that the Board of Trustees accepted Defendant Dziuban's position and that Plaintiff would receive a bi-monthly pension payment of $456.30. Dkt. # 11-2. The letter simply stated the amount that Plaintiff would receive under the EDRO. It does not appear that it addressed any concerns that Plaintiff may have had.

According to the Board of Trustees:

The City of Saginaw Police Officers and Firefighters Retirement System was established by Chapter XVI of the Saginaw City Charter and is governed by Title I, Chapter 16 of the Saginaw Code of Ordinances. [] The responsibility for the general administration and management of the system and for making effective and construing the provisions of the Retirement System is vested in the Board of Trustees established by Section 16.04 of the Retirement Ordinance. Joseph Dziuban was included in the membership of the Retirement System (Section 16.07) and was eligible for a Voluntary Retirement (Section 16.09) after attainment of his applicable Voluntary Retirement Age, defined as age fifty two (52) or actuarial age fifty (50) with twenty (20) years of service (Section 16.02).

Dkt. # 7 at 4-5. Moreover, the Board of Trustees explain its pension system with regard to Defendant Dziuban as follows:

Upon retirement, Defendant Dziuban was entitled to a pension as provided in Section 16.12 of the Retirement Ordinance which provides in pertinent part that 'a Fire Chief or Assistant Fire Chief who retires on or after March 25, 1999, shall receive two and six-tenths percent (2.6%) for the first twenty-five (25) years of service and two and three-fourths percent (2.75%) for all years thereafter of his or her final average salary multiplied by the number of years and fraction of a year of his or her credited service.'

Accordingly, as part of Defendant Dziuban's retirement calculation, the Board of Trustees must first have determined his Final Average Salary.

*Id.* at 5.

On August 14, 2007, Jim Koss of Gabriel, Roeder, Smith & Company, consultants and actuaries, sent a letter to Church recommending Plaintiff's appropriate bi-weekly pension payment, as an alternate payee under Defendant Dziuban's benefit plan. Koss indicated that Plaintiff's bi-weekly payment, as calculated, is correct.

Plaintiff filed the instant complaint alleging five counts. Count I alleges that the Board of Trustees violated Article 9, § 24 of the Michigan Constitution, which guarantees that the government shall not diminish or impair financial benefits of a pension plan. MICH. CONST. ART. 9 § 24. Count II alleges breach of contract against the Board of Trustees. Count III alleges breach of fiduciary duties, and Count V alleges violation of Plaintiff's procedural due process rights against the Board of Trustees and Church. Count III alleges tortious interference with contract against all Defendants.

## II

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007) (citations omitted); *see also Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("[W]hile liberal, this standard of review does require more than the bare assertion of legal conclusions."). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombley*, 127 S.Ct. at 1965, (Citations omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). *See also Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review), *cert. denied*, 484 U.S. 945 (1987).

## I

### A

Defendant Dziuban asserts that Count IV, tortious interference with contractual relations, is barred by the *Rooker-Feldman* doctrine. He contends that Plaintiff intends for this Court to substantively review the state court's decision regarding the interpretation of the EDRO.

The *Rooker-Feldman* doctrine applies in a limited fashion to "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . ." *ExxonMobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005); *See also Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006) ("Appellate review – the type of judicial action barred by *Rooker-Feldman* –

consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law.") (citation omitted). "The *Rooker-Feldman* doctrine is derived from two Supreme Court cases which establish that 'lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings.'" *Pieper v. American Arbitration Ass'n*, 336 F.3d 458, 460 (6th Cir. 2003) (citing *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir.2002); see also *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). The *Rooker-Feldman* doctrine bars re-litigation of claims raised in state court proceedings as well as claims that are 'inextricably intertwined' with the claims asserted there. *Pieper*, 336 F.3d at 460 (citing *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998)). The Sixth Circuit analyzed the *Rooker-Feldman* doctrine in the context of an action brought by party to a related state court divorce proceeding. *Catz,* 142 F.3d at 279. In *Catz*, the *Rooker-Feldman* doctrine was found not to bar a former husband's action in federal court against his former wife seeking to declare that a state court divorce decree was invalid because the state action violated due process. *Id.* at 294-95. The *Catz* Court reasoned that the former husband's action in federal court was not barred by the *Rooker-Feldman* doctrine because his "claims of the alleged procedural violation of [his] constitutional rights d[id] not rest on any substantive wrongness of the rulings of the [state] court[]." *Id.* at 295.

Additionally, Defendant Dziuban contends that the Court lacks subject matter jurisdiction over Plaintiff's action because the domestic relations doctrine removes jurisdiction from federal courts to state courts. The domestic relation doctrine is viewed as an exception to diversity jurisdiction of matters concerning 'the subject of divorce, or for the allowance of alimony." *Drewes*

*v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988)(quoting *Barber v. Barber*, 62 U.S. 582, 584 (1859).

The reasoning behind the domestic relations doctrine is that "the field of domestic relations involves local problems 'peculiarly unsuited to control by federal courts.'" *Drewes*, 863 F.2d at 471 (quoting *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981)). The domestic relations exception does not apply to tort or contract claims with "domestic relations overtones." *Drewes*, 863 F.2d at 471 (citing *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir. 1985)). "It is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Drewes*, 863 F.2d at 471 (quoting *Firestone*, 654 F.2d at 1216). Recently, however, the Sixth Circuit held that "the domestic relations exception applies only where a plaintiff positively sues in federal court for divorce, alimony, or child custody" *Catz v. Chalker*, 142 F.3d 279, 292 (6th Cir. 1998) (relying on *Ankenbrandt v. Richards*, 504 U.S. 689, 707 (1992)).

To appropriately address Defendant Dziuban's motion to dismiss on the grounds of the *Rooker-Feldman* doctrine and the domestic relations doctrine, it is necessary, as a beginning point, to understand the nature of Plaintiff's separate benefit right. The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, ("ERISA") established the "general rule" that qualified retirement plan benefits may not be assigned or alienated. HON. MARILYN J. KELLY ET AL., MICHIGAN FAMILY LAW 16-4 (The Institute of Continuing Legal Education ed., 6th ed. 2007). In the Retirement Equity Act of 1984, Pub. L. No. 98-397, 98 Stat. 1426 (codified as amended in scattered sections of 26 U.S.C., 29 U.S.C.), Congress amended ERISA to exclude qualified domestic relations orders ("QDRO") from this general rule because it was unclear whether the express preemption of ERISA precluded the division of retirement benefits by state domestic relations courts. KELLY, *supra* at 16-4.

Within that exception to the rule, state courts may issue a defined benefit plan order that provides the parties a shared payment, or the order may create a "separate interest" in an alternate payee. The shared payment approach divides actual payments, as made, between the participant and the alternate payee;" whereas, "[t]he separate interest approach divides the entire retirement benefit . . . into two separate benefits for two separate participants." KELLY, *supra* at 16-20. Thus, the QDRO exception to ERISA allows a state court to structure a pension payment as either a shared or separate payment.

Michigan law provides a similar regulatory scheme for state and municipal retirement benefits under the Public Employee Retirement Benefit Protection Act ("PERBPA"). Mich. Comp. Laws § 38.1681 *et seq.* Similar to ERISA, retirement benefits are generally unassignable under PERBPA, Mich. Comp. Laws. § 38.1683, with an exception for an EDRO. Mich. Comp. Laws § 38.1684(2). Michigan's Eligible Domestic Relations Order Act of 1991 ("EDROA") provides a scheme in which retirement systems could administer benefits to plan participants and alternate payees. Mich. Comp. Laws § 38.1701 et seq. Under EDROA, a Domestic Relations Order is a "judgment, decree, or order of a court made pursuant to the domestic relations law of this state and relating to the provision of alimony payments, child support, or marital property rights to a spouse of a participant under a judgment of separate maintenance, or to a former spouse, child, or dependent of a participant." Mich. Comp. Laws 38.1702(c).

To be valid, an EDRO is to state the payment amount or the manner in which the payment shall be calculated, and provide that the order apply to the retirement system and require it to make payments to the alternate payee. Mich. Comp. Laws § 28.1702(e)(iii-iv). An EDRO may not require a retirement system to provide a benefit beyond its obligation under the plan, an increased

-12-

benefit determined on the basis of actuarial value, or a payment to a alternate payee if it is required to pay another alternate payee under an earlier EDRO. Mich. Comp. Laws § 28.1702(e)(v-vii). "[A]n alternate payee is entitled to an actual interest in a share of a benefit that is or will become payable to a participant, if so provided in an EDRO filed with the retirement system. The retirement system shall administer the payment of a benefit pursuant to the EDRO . . ." Mich. Comp. Laws § 38.1703. The result of an EDRO is that state domestic relations courts order the payment to be made, but the responsibility falls on the retirement systems to tender payment to an alternate payee. Thus, the statutory scheme anticipates state courts issuing domestic relations orders as a matter of state domestic relations and property law, and on the other hand, trustees of a retirement plan overseeing an order for compliance with the provisions of its plan.

With that understanding of state EDROs, the Court concludes that the *Rooker-Feldman* and domestic relations doctrines may apply in the instant case, but it is unclear at this stage of the litigation. The state court may have decided the question as one of interpretation of the EDRO language, one of actuarial valuation, or as one of interpreting the property division in the judgment of divorce. Without that information, it is premature for the Court to determine the applicability of these doctrines. Thus, the Court will deny Defendant Dziuban's motions on these grounds.

B

Defendant Dziuban contends that he is entitled to dismissal of Plaintiff's tortious interference with contractual relations cause of action (Count IV), because he is unable to interfere with the EDRO, as a matter of law, as a party bound by the EDRO. Under Michigan law, a prima facie claim must allege "a contract, a breach, and an unjustified instigation of the breach by the defendant." *Badiee v. Brighton Area Schools*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005) (quoting *Mahrle v.*

*Danke*, 549 N.W.2d 56 ( Mich. Ct. App. 1996)). "To maintain a cause of action for tortious interference, the plaintiffs must establish that the defendant was a 'third party' to the contract or business relationship." *Reed v. Michigan Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993) (quoting *Dzierwa v. Michigan Oil Co.*,393 N.W.2d 610 (Mich. Ct. App. 1986)). The *Reed* Court recognized that it is "settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation." *Id.*

Additionally, Plaintiff also alleged tortious interference with economic expectancy in the same count. Under Michigan law, "[t]he elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Mino v. Clio School Dist.*, 661 N.W.2d 586, 597 (Mich. Ct. App. 2003).

Plaintiff alleges that Defendant Dziuban intentionally interfered with the Board of Trustees' by contacting a representative of the Board of Trustees to explain his position and to influence its interpretation and determination of Plaintiff's separate interest. Moreover, the calculation of Plaintiff's separate interest directly benefitted Defendant Dziuban by reducing the actuarial value of her payment. Defendant Dziuban may have a factual defense. Perhaps he did not contact a plan representative. Or, depending upon the rationale of the state court, he may have been entitled to explain his interpretation of the EDRO to the plan administrator. Clearly, however, Defendant Dziuban acted "solely for his own benefit." Regardless of those factual possibilities, Plaintiff's factual allegations that Defendant Dziuban influenced the Board of Trustees for a benefit he was not

entitled to sufficiently states a claim under Michigan law.

C

The Board of Trustees and Church move to dismiss Plaintiff's due process claim for failure to state a claim. FED. R. CIV. P. 12(b)(6). They contend that Plaintiff received adequate due process before the state court and that the Board of Trustees, nor Church owe Plaintiff further due process. Plaintiff's due process claim is grounded on the allegation that the Board of Trustees and Church did not conduct a pre-termination hearing or otherwise afford Plaintiff notice of the grounds for her allegedly reduced pension payment.

To establish a violation under § 1983, a plaintiff must show that a defendant acted under color of state law and that the offending conduct deprived her of rights secured by federal law. *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citation omitted). The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of . . . property, without due process of law." U.S. CONST. amend. XIV, § 1. The Sixth Circuit explained a two-step process that a court must take in evaluating a due process challenge: "The first step determines whether the plaintiff has a property interest entitled to due process protection. Second, if the plaintiff has such a protected property interest, 'this court must then determine what process is due.' *Id.* at 742." *Mitchell v. Fankhauser*, 375 F.3d 477, 479-80 (6th Cir. 2004) (citing *Leary v. Daeschner*, 228 F.3d 729, 741-42 (6th Cir.2000)).

"Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "Property, in the constitutional sense, is merely a

label applied to a benefit when an individual possesses a 'legitimate entitlement' to it under 'existing rules or understandings.'" *Pappas v. City of Lebanon*, 331 F.Supp. 2d 311, 316 (E.D. Pa. 2004) (citing *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 779-80 (1980) (quoting *Klein v. Califino*, 586 F.2d 250, 258 (3d. Cir. 1978). "Legitimate entitlement has been found most often in those benefits that the state has accorded in the past, and that the individual has a reasonable expectation will continue in the future." *Pappas*, 331 F.Supp. 2d at 317 (internal quotations omitted).

After a plaintiff establishes a protected property interest, "a predeprivation hearing of some sort is generally required to satisfy the dictates of due process." *Leary,* 228 F.3d at 742 (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)). The predeprivation process, however, need not be "elaborate" as the "amount of process required depends, in part, on the importance of the interests at stake." *Id.*

Plaintiff's due process claim relies on the notion that the Board of Trustees and Church are obligated to undertake certain procedures to address Plaintiff's disputed interpretation of the EDRO. The EDRO, however, is an instrument of the circuit court to effectuate a judgment of divorce. As the drafter, the circuit court explicitly retains jurisdiction to issue any "necessary or proper" orders to properly enforce the EDRO. Under Michigan rules of civil procedure, a party may move for reconsideration of a court order, including an EDRO. Mich. Ct. R. 2.119. A circuit court's decision regarding the calculation of retirement benefits may be appealed, but not collaterally attacked in another court. *Theisen v. City of Dearborn*, 147 N.W. 2d 720, 724 (Mich. 1967).

On the other hand, a retirement plan beneficiary may request the review of a retirement board decision "by writ certiorari only." Mich. Comp. Laws § 38.555. Michigan law characterizes

retirement boards as a quasi-judicial body, and provides immunity as such. *Id.*

Assuming that the Board of Trustees and Church acted under the color of law pursuant to 42 U.S.C. § 1983 and that the benefits were property for the purposes of Fourteenth Amendment, Plaintiff failed to state a claim that either the Board of Trustees or Church violated her Due Process rights. Plaintiff had two avenues available to her to challenge the alleged erroneous calculation of the payments. First, Plaintiff had the option to review the decision by filing a motion for reconsideration of the order in the state court to resolve her concerns involving the interpretation of the EDRO. Second, Plaintiff could have exercised her statutory right of action against the retirement plan for correction of the benefit by a writ of certiorari. Plaintiff did not allege that she filed such a writ or that it was denied without due process. Thus, Plaintiff has not established that either the Board of Trustees or Church denied Plaintiff of her right to due process owed by either of them.[2]

### D

The Board of Trustees and Church contend that they are immune from liability for Plaintiff's remaining claims under Mich. Comp. Laws § 691.1407 and Mich. Comp. Laws § 38.555. Michigan's Fire Fighters and Police Officers Retirement Act ("FFPORA") establishes the formation and operation of peace officer retirement system boards. Mich. Comp. Laws § 38.551 *et seq.* Under the FFPORA, a retirement system board is required to make necessary rules and regulations and disburse pensions and other benefits payable. Additionally, a retirement system board is considered a quasi-judicial body under the FFPORA, and "its actions shall be reviewable by writ of certiorari." The Michigan Court of Appeals explained quasi-judicial immunity provided to retirement boards:

---

[2] Judge, this conclusion leads to the question of the Court's subject matter jurisdiction. Please let me know if you would like to address that in this opinion, or in a supplemental order.

> Fire fighters' and police officers' retirement systems' boards of trustees are legislatively defined as quasi-judicial bodies, whose actions, generally, are reviewable only by writ of certiorari. Quasi-judicial immunity is available to those serving in a quasi-judicial adjudicative capacity as well as those persons other than judges without whom the judicial process could not function. Because the Legislature has determined that defendants-appellants constitute a quasi-judicial body, they are entitled to the benefits of quasi-judicial immunity. Accordingly, rather than suing the board and its members for damages, plaintiffs should have sought a writ of superintending control to correct the erroneous decision.

*Bay City Police and Fire Retirees v. Bay City Police and Fire Retirement System Bd.*, 2006 WL 2457485, at *2 (Mich. Ct. App. Aug. 24, 2006) (unreported) (internal citations and quotations omitted). Moreover, the legislature granted broad based immunity to retirement boards such that retirement boards are immune to breach of fiduciary duty claims. *Id. at *3.*

Plaintiff alleged a violation of the Michigan Constitution (Count I), a breach of contract claim (Count II), and a tortious interference with economic expectancy/contractual relations claim (Count IV) against the Board of Trustees. Each of these claims are predicated on the notion that the Board of Trustees incorrectly interpreted the EDRO. Michigan law confers quasi-judicial status upon the Board of Trustees and provides a specific manner to challenge its decisions. Plaintiff has not alleged that she challenged the Board of Trustees' decision by a writ of certiorari. Thus, the Board of Trustees are entitled to quasi-judicial immunity pursuant to Mich. Comp. Laws § 38.555.

Additionally, Plaintiff also alleges that the Board of Trustees breached their acknowledged fiduciary duty to Plaintiff. In contrast to Plaintiff's other state causes of action, predicated on the Board of Trustees' allegedly incorrect interpretation of the EDRO, Plaintiff's fiduciary duty claim revolves around the allegation that the Board of Trustees betrayed Plaintiff's confidence as an alternate payee with a separate interest. Despite this key distinction, the Court concludes that the broad nature of the quasi-judicial immunity provided to the Board of Trustees bars the fiduciary duty

claim, as well.  In *Bay City Police*, *Id.,* the Michigan Court of Appeals explicitly concluded that Mich. Comp. Laws §38.555 provided immunity for a fiduciary duty claim.  Plaintiff did not offer legal authority directly disputing that contention,[3] and the Court is satisfied that quasi-judicial immunity also shields the Board of Trustees from Plaintiff's fiduciary duty claim.

Plaintiff also alleges that Church tortiously interfered with Plaintiff's contractual relations (Count IV).  An employee of a governmental agency is immune from tort liability if the employee is acting within the scope of his or her authority, the agency is engaged in the exercise of a governmental function, and the employee's actions do not amount to gross negligence.  Mich. Comp. Laws § 691.1407(7)(2)(a-c).  Generally, an employee is not immune from an intentional tort because when an  employee undertakes intentionally tortious conduct, he or she is no longer engaged in the exercise of a governmental function. See *Flones v. Dalman*, 502 N.W.2d 725, 728 (Mich. Ct. App. 1993).  Simply alleging that a government employee acted "intentionally" does not extinguish a defendant's tort immunity because, as a practical matter, any plaintiff could include allegations of intentional conduct in the complaint to  avoid the defense of immunity.  *Mosqueda v. Macomb County Youth Home*, 349 N.W.2d 185, 187 (Mich. Ct. App. 1984) (citing *Smith v. State of Michigan*, 333 N.W.2d 50 (1983)).  Instead, a plaintiff must plead allegations demonstrating that the tortious activity was "outside the exercise or discharge of the governmental function."  *Mosqueda*, 349 N.W.2d at 187 (quoting *Elliott v. Dep't of Social Services,* 333 N.W.2d 603 (Mich. Ct. App. 1983)(emphasis omitted).

---

[3]  The Court recognizes that *Bay City Police*, 2006 WL 2457485,  is unpublished.  Plaintiff, however, also offered unpublished authority, *Crawford v. City of Highland Park,* No. 88-CV-70471-DT, 1989 U.S. Dist/ Lexis 17909 (E.D. Mich. Oct. 17, 1989 ) and *Trager v. City of Detroit*, No. 209668; 214835, 2000 Mich. App. Lexis 904 (August 18, 2000), contending that the Board of Trustees are not entitled to quasi-judicial immunity.  Though these opinions discuss actions against retirement boards, neither discusses the applicability of quasi-judicial immunity Mich. Comp. Laws § 38.555.

Plaintiff's tortious interference claim alleges that "Defendants intentionally and improperly interfered with the economic expectancy of Plaintiff." Dkt. # 5 at ¶ 55. Plaintiff has not alleged that Church acted outside the scope of her governmental employment or any specific allegations regarding the "intentional" nature of her conduct. Absent any facts alleging that Church's conduct was outside the scope of her governmental employment, she is entitled to governmental tort immunity. Thus, the Court will dismiss Plaintiff's tortious interference claim against Church.

E

Finally, Church seeks to dismiss Plaintiff's breach of fiduciary duty claim asserting that she does not owe a fiduciary duty to Plaintiff. Under Michigan law, "[a] fiduciary relationship exists when there is a reposing of faith, confidence and trust and the reliance of one upon the judgment and advice of another." *Vicenco v. Ramirez*, 536 N.W.2d 280, 284 (Mich. Ct. App. 1995) (citing *Ulrich v. Federal Land Bank of St. Paul*, 480 N.W.2d 910 (Mich. Ct. App. 1991)). "Relief is granted when such position of influence has been acquired and abused, when confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial." *Smith v. Saginaw Sav. & Loan* Ass'n, 288 N.W.2d 613, 618 (Mich. Ct. App. 1979) (citing *Stephenson v. Golden*, 276 N.W. 849 (Mich. 1937)).

Church contends that she does not have a fiduciary relationship with Plaintiff and that Plaintiff has not adequately alleged that such a relationship exists. Plaintiff alleges that Church owed a fiduciary duty to Plaintiff and that she acted in her own self interest. Plaintiff's complaint, however, does not provide specific allegations indicating that Church, as the Board of Trustees' secretary, owed Plaintiff a fiduciary duty. Nor did Plaintiff offer any legal authority to support the proposition that Church, in her individual capacity, owed Plaintiff a fiduciary duty. The allegation

-20-

is merely a legal conclusion. Unlike the Board of Trustees, which acknowledged its fiduciary duty to Plaintiff, Church had no special obligations to Plaintiff. Thus, the Court will dismiss Plaintiff's breach of fiduciary claim with regard to Church.

IV

Accordingly, it is **ORDERED** that Defendant Joseph A. Dziuban's motion to dismiss [dkt. # 14] is **DENIED**.

It is further **ORDERED** that the Board of Trustees and Beth Church's motion to dismiss [dkt. # 7] is **GRANTED**. Defendant Board of Trustees of Saginaw Police Officers and Firefighters Retirement System and Defendant Beth Carson Church are **DISMISSED**.

s/Thomas L. Ludington            <br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: January 18, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 18, 2008.

s/Tracy A. Jacobs        <br>
TRACY A. JACOBS
